# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **LILLY HELENE SCHAFFER,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-518 |
| | § | |
| **SUNTRUST MORTGAGE, INC. and THE BANK OF NEW YORK MELLON, as Trustee for CWMBS 2005-J4** | § § § § | |
| | § | |
| Defendants. | § § § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636. On May 22, 2017, the report of the Magistrate Judge (Dkt. #43) was entered containing proposed findings of fact and recommendations that Defendants' Motion for Summary Judgement (Dkt. #38) be granted in part and denied in part.

### BACKGROUND

This case stems from the actions of the parties in processing Lilly Helene Schaffer's ("Plaintiff") mortgage. In 2005, Plaintiff purchased the property located at 6439 Bluffview Drive, Frisco, TX 75034 (the "Property"), and executed a Note in the amount of $1,330,000.00 (the "Note") secured by a Deed of Trust on the Property (the "Deed of Trust") (collectively, the Note and Deed of Trust are the "Mortgage") (Dkt. #24 at pp. 2-3, Dkt. #38-11). The mortgage is currently owned by The Bank of New York Mellon, as Trustee for CWMBS 2005-J4 ("BONY"), and SunTrust Mortgage, Inc. ("SunTrust") is the mortgage servicer (collectively, BONY and

SunTrust are "Defendants") (Dkt. #24-6). In 2013, Plaintiff fell into default on her mortgage. *See id.* Defendants foreclosed on the Property in September of 2016 (Dkt. #38 at p. 1). Defendants report, and Plaintiff does not contest, that Plaintiff has not made a payment since March 2013. *See id.*

Plaintiff initially filed suit in the 429th Judicial District of Collin County in January 2016 against Defendants. *See* case styled as *Lilly Helene Schaffer v. The Bank of New York Mellon, et al.*, Cause No. 4:16-cv-00047. Defendants removed the action to the United States District Court for the Eastern District of Texas based on diversity jurisdiction. *See id.* On February 2, 2016, Plaintiff filed for bankruptcy, and the suit was stayed. *See id.* On April 12, 2016, Plaintiff's bankruptcy case was dismissed. *See id.* After Plaintiff failed to file a required status report, the District Court dismissed the suit without prejudice. *See id.*

On June 30, 2016, Plaintiff again filed suit in the 429th Judicial District of Collin County, seeking damages and a temporary restraining order against Defendants regarding their handling and service of Plaintiff's mortgage (Dkt. #3). Plaintiff asserted several causes of action, including: (1) common law fraud and misrepresentation, and violations of (2) Regulation O of the Code of Federal Regulations, (3) Federal Fair Debt Collection Practices Act ("FDCPA") and Texas Debt Collection Practices Act ("TDCPA"), (4) Fair Credit Reporting Act ("FCRA"), and (5) Real Estate Settlement Procedures Act ("RESPA") (Dkt. #3 at pp. 7-14). Plaintiff later amended her Complaint to add an additional cause of action under the Fair Housing Act ("FHA") (Dkt. #24 at pp. 8-10).

On July 13, 2016, Defendants removed the action to the United States District Court for the Eastern District of Texas based on diversity jurisdiction (Dkt. #1). On August 26, 2016, Plaintiff filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction

2

in effort to bar Defendants from foreclosing on the Property (Dkt. #11).  On September 2, 2016, the District Court denied Plaintiff's Motion (Dkt. #18).

On September 6, 2016, the foreclosure sale took place and BONY purchased the Property (Dkt. #33).  Plaintiff did not vacate the property (Dkt. #32 at p. 3).  Defendants then filed a separate suit in the justice court of Collin County, Texas, requesting that Plaintiff vacate the Property (Dkt. #36, Ex. A).  Plaintiff filed a Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Plea in Abatement, asserting that the action should be stayed until a final determination is made in the present case (Dkt. #32, Ex. C, at pp. 2-9).  The justice court abated the case until this matter is resolved, and ordered Plaintiff to make monthly rent payments of $1,100.00 to Defendants (Dkt. #33, Ex. A ("$1,100 rent on/or before Nov. 15 and on the 15th of every month thereafter while abated")).  On December 16, 2016, the Court granted Defendants' Motion for Leave to File a Counterclaim for declaratory judgment and forcible detainer, formally bringing the question of possession before the Court (Dkts. #27, #28).

On March 15, 2017, Defendants filed the present Motion for Summary Judgment (Dkt. #38).  On March 29, 2017, Plaintiff filed a response (Dkt. #40).  On April 5, 2017, Defendants filed a reply (Dkt. #41).  On April 12, 2017, Plaintiff filed a sur-reply (Dkt. #42).  On May 22, 2017, the Magistrate Judge issued a Report and Recommendation (the "Report") (Dkt. #43).  On June 5, 2017, Plaintiff filed objections (Dkt. #44).  On June 16, 2017, Defendants filed a response (Dkt. #46).  On June 23, 2017, Plaintiff filed an additional response (Dkt. #47).

## ANALYSIS

*Common Law Fraud and Misrepresentation*

Plaintiff contends the Magistrate Judge incorrectly stated that Plaintiff did not address the element of reliance in her fraud claim (Dkt. #44 at p. 3).  Plaintiff states, in her Second Amended

3

Complaint, she was "told not to make any payments until it was resolved. Despite this, Plaintiff continued to send in payment until SunTrust returned the funds on or about October 9, 2014." (Dkt. #24 at p. 4). The Report and Recommendation notes this fact specifically (Dkt. #43 at p. 4). Plaintiff objects, stating that, in its response to the Motion for Summary Judgment, rather than the Second Amended Complaint, she argued that the actionable misrepresentation is Defendant's "instruction to stop making monthly mortgage payments, which necessarily caused a default under the terms of the loan," and that SunTrust's instruction to not make payments "would necessarily result in a default under the terms of the Loan." (Dkts. #44 at pp. 3-4; #40 at 11-12). These statements suggest that an individual *could* rely on the alleged misrepresentation to a default, but Plaintiff's Second Amended Complaint demonstrates that she *did not* rely on any statement to stop sending payments. *See* Dkt. #24 at p. 4 ("Despite this, Plaintiff continued to send in payment. . . ."). Plaintiff objects, stating that the Magistrate Judge "[a]pparently [relied] exclusively on this statement," but this statement, in and of itself, demonstrates Plaintiff did not rely on the alleged misrepresentation. Plaintiff does not allege reliance, and summary judgment is appropriate.

Plaintiff also objects to the Magistrate Judge's conclusion that the statute of frauds bars Plaintiff's fraud and misrepresentation claim (Dkt. #44 at p. 4). Plaintiff asserts that Defendants are the only entities with the ability to modify Plaintiff's loan terms and, since nothing in the Note or Deed of Trust governs how loan modification and loss mitigation applications will be considered, Plaintiff is forced to rely upon Defendants' statement that she must stop making payments in order to be considered for a loan modification or other loss mitigation (Dkt. #44 at p. 5). Plaintiff objects to the Magistrate Judge's characterization of the alleged misrepresentation— to stop making monthly payments in order to be considered for loan modification and loss mitigation—as within the four corners of the Note and Deed of Trust, because the documents do

4

not provide requirements and/or procedures in order for Defendants to consider Plaintiff for a loan modification and/or loss mitigation (Dkt. #44 at p. 5). Plaintiff admits, however, that Defendant's alleged instruction that she stop making payments "was necessarily a breach of the loan contract" (Dkt. #44 at p. 5).

The Court agrees that the alleged instruction is "necessarily a breach of the loan contract," in direct opposition to the terms of the Mortgage contract, and is therefore barred. *See, e.g., Bush v. Wells Fargo Bank, N.A.*, No. SA:13-CV-530-DAE, 2014 WL 12496571, at *1 (W.D. Tex. Apr. 24, 2014) (finding that a claim based on the statement that "Wells Fargo's representatives informed the Plaintiff that he was not allowed to make any mortgage payments while in loan modification status" was barred by the statute of frauds.); *see also, Robinson v. Bank of America, N.A.*, No. 3:13-CV-869-L-BK, 2013 WL 7877027, at *4 (N.D. Tex. Sep. 11, 2013) ("In this case, Plaintiff's breach of contract claims are based on their reliance on Defendant's representatives' oral instructions not to make mortgage payments while their loan modification application was pending, which, taken as true, is nonetheless an oral modification of the Note and Deed of Trust prohibited by the Texas statute of frauds."). The Report and Recommendation specifically cited these cases, and Plaintiff offered no case law or argument as to why the Court should come to a different conclusion in this case.

Plaintiff also contends the statute of frauds has an exception to prevent actual fraud (Dkt. #44 at p. 4). Plaintiff does not explain how the exception applies beyond stating that she has alleged fraud. The case cited by Plaintiff, *Nagel v. Nagel*, 633 S.W.2d 796, 800 (Tex. 1982), is inapposite, as it involved an oral promise to sign an instrument complying with the statute of frauds, which is not a fact pattern before the Court. The Court finds Plaintiff's fraud claim is barred by the statute of frauds.

5

Finally, Plaintiff argues the Magistrate Judge incorrectly concluded that Plaintiff's claim for common law fraud and misrepresentation is barred by the economic loss doctrine (Dkt. #44 at p. 6). Plaintiff cites *Shellnut v. Wells Fargo Bank, N.A.*, 02-15-00204-CV, 2017 WL 1538166, at *11 (Tex. App.—Forth Worth Apr. 27, 2017, no pet. h.), and argues the case demonstrates that summary judgment on fraud and negligent misrepresentation claims under the economic loss doctrine is inappropriate here, where the Note and Deed of Trust are silent with regard to representations from lenders to borrowers and with regard to loss mitigation or loan modification activities, particularly as Plaintiff alleged damages outside of the scope of a breach of contract claim (Dkt. #44 at p. 7).

While *Shellnut* did involve a fraud and misrepresentation claim related to the modification of a mortgage as here, the Fort Worth Court of Appeals allowed claims to proceed that were reliance damages independent of the loan's subject matter. *See Shellnut*, 2017 WL 1538166 at *12. Here, as previously discussed, Plaintiff neither alleges nor substantiates damages arising solely out of reliance.

The Court finds, in summary, that Defendant is entitled to summary judgment on Plaintiff's fraud and misrepresentation claims on three (3) sufficient grounds.

*Fair Housing Act*

Plaintiff objects to the Magistrate Judge's conclusion that summary judgment is appropriate on Plaintiff's Fair Housing Act claim (Dkt. #44 at p. 7). The Report and Recommendation states, that "Plaintiff fails to state an actionable claim for a reasonable accommodation in asserting that she was not granted loss mitigation and forbearance or foreclosure alternatives." (Dkt. #43 at p. 9). Plaintiff complains that the Report does not comment on

Plaintiff's discussion regarding whether the requested accommodation was reasonable and necessary to provide equal opportunity to live in a residential zone (Dkt. #44 at p. 8).

To the extent Plaintiff is claiming lack of access to the information regarding loss mitigation or forbearance or foreclosure alternatives, the evidence presented demonstrates this information was not distributed or conditioned based on whether an individual is disabled or not disabled. Further, none of the referenced programs or opportunities describe anything other than possibilities. No evidence describes an entitlement. Plaintiff has asserted that Defendants' refusal to engage in loss mitigation or forbearance or foreclosure alternatives would be "bad enough" if Plaintiff was not disabled, but is a violation of the FHA because she is disabled. As one court has stated, "no provision of federal law requires financial institutions or other entities to treat disabled persons *more* favorably than non-disabled persons, so as for example, to treat loan-repayment deadlines as non-binding when the borrower is disabled." 91 F.Supp.3d 491, 507 (S.D. N.Y. 2015) (emphasis in original).

Defendants engage in loss mitigation, forbearance, or foreclosure alternatives, and advertise the *potential* of these programs to *everyone*, but as the Magistrate Judge noted, "Plaintiff appears to contend that Defendants were required to *grant* loss mitigation and forbearance in order to prevent a foreclosure and an accommodation to prevent an eviction because she is a disabled individual." (Dkt. #43 at p. 9) (emphasis added). There is no evidence presented that disabled individuals have been denied access to any presented program, nor that any individual is entitled to any of the listed programs.

Plaintiff does not address the finding in the Report that Plaintiff failed to establish a discriminatory effect claim, and adopts this finding as the finding of the Court. Defendants are entitled to summary judgment on Plaintiff's Fair Housing Act claim.

7

*Fair Debt Collection Practices Act*

Plaintiff objects to the Magistrate Judge's finding that "Plaintiff does not raise an issue of material fact as to the date SunTrust began servicing the Loan and . . . recommends that Defendants be granted summary judgment as to Plaintiff's FDCPA claims." (Dkt. #43 at p. 12). Plaintiff asserts that her summary judgment evidence raised a fact issue to show that SunTrust did not begin servicing the Loan until 2014, after the Loan was in default (Dkt. #44 at p. 9).

Plaintiff admits in her affidavit that SunTrust was the servicer when she went into default (Dkt. #40, Ex. 1 at pp. 3-4). Further, even Plaintiff notes that Defendants presented a Notice of Assignment that shows SunTrust began serving Plaintiff's Loan on August 1, 2005, and if true, SunTrust would be exempted from FDCPA liability (Dkt. #40 at p. 20). Plaintiff's current assertion, which is contradictory to her affidavit, is based on documents evidencing the transfer of the Deed of Trust—not the date on which SunTrust became the mortgage servicer. As such, there is no genuine issue of material fact regarding the date SunTrust began servicing the Loan, and summary judgment is appropriate.

*Texas Debt Collection Practices Act ("TDCA")*

Plaintiff objects to the Magistrate Judge's finding that Plaintiff's TDCA claims should be dismissed via summary judgment (Dkt. #44 at p. 9). Plaintiff argues the alleged instruction to stop making payments so that Defendants could work on a review for a loan modification goes to the character or status of her debt—that it is eligible for modification (Dkt. #44 at p. 10). In its recommendation on this issue, the Magistrate Judge cited *Miller v BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013), and Plaintiff did not address the Fifth Circuit case law in any form or fashion. In *Miller*, the Fifth Circuit held that appellants failed to demonstrate that the appellee misrepresented the character, extent, or amount of the debt because the appellants were

8

always aware: (1) they had a mortgage debt; (2) of the specific amount that they owed; and (3) they had defaulted. 726 F.3d at 723. The court stated precisely that "[n]othing in the [appellants'] allegations suggests that the [appellee] led them to think differently with respect to the character, extent, amount, or status of their debt—only that [appellee] promised to send them a loan modification and to delay foreclosure. Accordingly, the [appellants] have not stated a claim upon which relief may be granted under [Tex. Fin. Code] § 392.304(a)(8)." *Id.* In *Miller*, the Fifth Circuit did not find that the promise to send a loan modification went to the character or status of the debt, and Plaintiff does not present any reason for a different result in the present case.

Plaintiff also objects to the statement in the Report that "Plaintiff has not shown actual damages or alleged entitlement to injunctive relief, and therefore, cannot prevail on her TDCA claim." (Dkt. #43 at p. 13). Plaintiff contends she presented damages including the loss of title to her home, attorneys' fees, and anxiety, stress, and mental anguish (Dkt. #44 at p. 10). The Court finds the Magistrate Judge did not err, as Plaintiff has shown no *actual* damages. The alleged damages are not related to the alleged misrepresentation. As it has previously been discussed, Plaintiff did not rely on the alleged misrepresentation. The asserted "damages," such as they are, relate to Plaintiff's inability to continue making monthly mortgage payments.

Texas Financial Code Section 392.304(a)(19) states that "a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices . . . using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Plaintiff did not reference Section 392.403(a)(19) in her Second Amended Complaint, only generally stating that Defendant SunTrust was "required to adhere to certain standards of conduct when attempting to collect the alleged debt . . . and [SunTrust] intentionally and/or knowingly breached that duty by engaging in false, deceptive and/or misleading acts or

9

conduct when communicating with the Plaintiff." (Dkt. #24 at p. 10). Plaintiff's initial objections discuss the character or status of her debt and damages, and does not discuss Section 392.403(a)(19) (Dkt. #44 at pp. 10-11). Defendants responded, citing *Miller* as previously discussed (Dkt. #46 at p. 8). Plaintiff filed an additional response, and argues that *Miller* alone is insufficient to support the Report's recommendation that Plaintiff's Section 392(a)(19) claim be dismissed (Dkt. #47 at p. 6). Plaintiff, however, does not substantively address the Report's conclusion. The Court agrees with the Magistrate Judge: it is unclear how the alleged deceptive or misleading conduct could constitute a claim under Section 392.403(a)(19) because, even as alleged, a direction to stop paying on a debt is entirely antithetical to collecting on that debt.

Defendants are entitled to summary judgment on Plaintiff's TDCA claims.

*Fair Credit Reporting Act ("FCRA")*

Plaintiff waived and abandoned her claim for violations of the FCRA (Dkt. #40 at p. 24). Defendants are entitled to summary judgment on Plaintiff's FCRA claim.

*Real Estate Settlement Procedures Act ("RESPA")*

Plaintiff objects to the Magistrate Judge's finding that Plaintiff's RESPA claim should be dismissed via summary judgment (Dkt. #44 at p. 11). Plaintiff contends that the finding in the Report that "Plaintiff does not substantiate her RESPA claim beyond a self-serving affidavit stating that Defendants prevented her from completing a loss mitigation packet and discourage[d] her from submitting one," improperly weighs evidence in a summary judgment proceeding (Dkt. #44 at p. 11).

Defendant submitted evidence that contradicts Plaintiff's affidavit and suggests Plaintiff both received a loss mitigation packet and submitted documents to Defendants, some of which were either incomplete or not in the proper form (Dkt. #38, Exs. 1, 8). While the Court's mandate

is to avoid weighing evidence, it is not required to ignore evidence demonstrating that no genuine issue of material fact exists.  Further, Plaintiff's affidavit does not counter Defendants' evidence regarding the receipt of the loss mitigation packet or the incompleteness of her submission with any evidence other than her word.  A self-serving affidavit, without more evidence, will not defeat summary judgment.  *See Sanchez v. Dall./Fort Worth Int'l. Airport Bd.*, 438 Fed.Appx. 343, 346-47 (5th Cir. 2011).  As the Report states, "[v]iewed in the light most favorable to Plaintiff, all submitted evidence indicates Plaintiff received the loss mitigation application/packet and Plaintiff failed to submit loss mitigation materials."

Defendants are entitled to summary judgment on Plaintiff's RESPA claim.

*Counterclaim – Forcible Detainer and Declaratory Relief*

Plaintiff objects to the Magistrate Judge's finding that Defendants should be granted summary judgment in favor of their counterclaim for forcible detainer and declaratory relief (Dkt. #44 at p. 12).  Plaintiff argues that because Plaintiff's claims should not be dismissed, the Report is incorrect in concluding Defendants are entitled to their counterclaim (Dkt. #44 at p. 12).  As previously expounded upon, the Court finds that Plaintiff's claims should be dismissed, and adopts the Magistrate Judge's findings as to Defendants' entitlement to summary judgment.  The Magistrate Judge recommended a partial denial, as the Report found that if Defendants wish to request attorneys' fees, this request should be submitted as a separate motion, with documentation of costs detailed, following the resolution of the present Motion for Summary Judgment (Dkt. #43 at p. 18).  The Court agrees.

Defendants are entitled to summary judgment as to Defendants' counterclaim, exempting entitlement to attorneys' fees, which may be taken up as a separate issue in a subsequent motion, should Defendants desire to do so.

11

CONCLUSION

Having received the report of the United States Magistrate Judge, having considered each of Plaintiff's timely filed objections (Dkt. #44), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #43) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that Defendants' Motion for Summary Judgement (Dkt. #38) is **GRANTED IN PART AND DENIED IN PART** and that all claims pending against Defendants SunTrust Mortgage, Inc. and The Bank of New York Mellon, as Trustee for CWMBS 2005-J4, be dismissed with prejudice.  The Court further finds that Defendants are entitled to possession of the Property and that Defendants be granted declaratory relief.

The Court finds that Defendants' Motion is denied without prejudice with respect to Defendants' request for attorneys' fees.  If Defendants wish to seek attorneys' fees, this request should be submitted as a separate motion, with documentation of the relevant costs detailed therein.

Defendants are entitled to the relief sought in their Counterclaim (Dkt. 27) for forcible entry and detainer. The Bank of New York Mellon, as Trustee for CWMBS 2005-J4's Counterclaim for a Writ of Possession (Dkt. 27) is **GRANTED**. This judgment shall have all the force and effect of a ***Writ of Possession*** as between the parties to this suit and also as to any person claiming a right in the Property that was acquired pending this suit.  The Sheriff, Constable, or other officer executing this judgment shall proceed by virtue of such judgment to place The Bank of New York Mellon, as Trustee for CWMBS 2005-J4 in possession within thirty (30) days.  All writs and processes necessary for enforcement of this judgment and costs of court may issue as are necessary.

**IT IS SO ORDERED.**

**SIGNED this 18th day of July, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE